EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Eagle Security Police, Inc. t/c/c Eagle Security Services, Inc. <br><br> Peticionario <br><br> v. <br><br> Efrón Dorado, S.E.; Norfe Development Corp.; Golden RE LLC; DCE Enterprises, Inc. h/n/c Paseo del Plata Shopping Center y Dorado Country Estates Homeowners Association, Inc. h/n/c Dorado Country Estates <br><br> Recurridos | Certiorari <br><br> 2023 TSPR 5 <br><br> 211 DPR ___ |

Número del Caso: AC-2022-23

Fecha: 20 de enero de 2023

Tribunal de Apelaciones:

Panel Especial

Abogado de la parte peticionaria:

Lcdo. Carlos E. Rosado Muñoz

Abogados de la parte recurrida:

Lcdo. Juan Hernández López de Victoria
Lcda. Cristina Santiago Amaro

Materia: Derecho Corporativo- El cambio de nombre de una entidad corporativa no afecta sus derechos o intereses propietarios para reclamar cualquier acreencia.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Eagle Security Police, Inc. t/c/c Eagle Security Services, Inc.<br><br>Peticionario<br><br>v.<br><br>Efrón Dorado, S.E.; Norfe Development Corp.; Golden RE LLC; DCE Enterprises, Inc. h/n/c Paseo del Plata Shopping Center y Dorado Country Estates Homeowners Association, Inc. h/n/c Dorado Country Estates<br><br>Recurridos | AC-2022-23 | *Certiorari* |

El Juez Asociado Señor Feliberti Cintrón emitió la *Opinión* del Tribunal.

En San Juan, Puerto Rico, a 20 de enero de 2023.

Comparece ante nos Eagle Security Police, Inc. t/c/c Eagle Security Services, Inc. (Eagle Security Police, Eagle Security o peticionaria),[1] y nos solicita que revisemos una *Sentencia* del Tribunal de Apelaciones en la que se confirmó una *Sentencia* del Tribunal de Primera Instancia que desestimó con perjuicio una demanda en cobro de dinero incoada contra varias corporaciones.

En particular, este recurso nos brinda la oportunidad de precisar si una enmienda al certificado de incorporación para cambiar el nombre de una entidad jurídica creada al

---

[1] Nótese que la demanda original fue presentada por Eagle Security Services, Inc. Sin embargo, posteriormente la demanda fue enmendada a los efectos de incluir a Eagle Security Police, Inc., nombre actual de la corporación.

amparo de la Ley Núm. 164 de 16 de diciembre de 2009, según enmendada, conocida como *Ley General de Corporaciones*, 14 LPRA sec. 3501 *et seq.* (Ley de Corporaciones): (1) modifica o extingue la capacidad jurídica del ente corporativo y, por tanto, su legitimación activa para demandar y reclamar el pago de una deuda líquida, vencida y exigible, y (2) si afecta adversamente los contratos otorgados bajo su nombre de origen o formación.

Por los fundamentos que discutiremos, adelantamos que contestamos en la negativa ambas interrogantes, razón por la que revocamos y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos en conformidad con esta Opinión. Veamos.

**I**

El 19 de agosto de 2019, Eagle Security presentó ante el Tribunal de Primera Instancia una *Demanda en cobro de dinero.* Dicha reclamación fue enmendada en varias ocasiones para,[2] entre otros asuntos, sustituir a las partes codemandadas por Efrón Dorado, S.E.; Norfe Development Corporation; Golden RE, LLC; DCE Enterprises, Inc., y Dorado Country Estates Homeowners Association Inc. h/n/c Dorado Country Estates (en conjunto, los codemandados o recurridos), e incluir el nombre de Eagle Security Police como parte demandante. En síntesis, Eagle Security alegó

---

[2]   A saber: el 18 de diciembre de 2019 (*Demanda enmendada y en cumplimiento de Orden*); el 14 de enero de 2020 (*Demanda enmendada*), y el 25 de agosto de 2020 (*Demanda enmendada a tenor con Orden de agosto de 2020*). *Demandas Enmendadas*, Apéndice del *certiorari*, págs. 185-190 y 198-200.

que los recurridos le adeudaban $154,599.90 por los servicios de seguridad prestados a sus negocios, por lo que solicitó, además, el pago de costas, gastos y honorarios de abogado por temeridad. Los codemandados, por su parte, presentaron una *Moción de desestimación* en la que adujeron que la reclamación de Eagle Security no establecía un vínculo contractual con éstos que los responsabilizara a pagar por los servicios de seguridad reclamados, así como tampoco exponía hechos que justificaran la concesión de un remedio.

Más adelante, los codemandados presentaron una *Moción para suplementar la solicitud de desestimación* en la que expresaron que, de una revisión rutinaria de los registros del Departamento de Estado, encontraron que Eagle Security Services, Inc., **con número de incorporación 106167** (Eagle Security Services-106167) fue una entidad doméstica con fines de lucro, cancelada el 14 de abril de 2014 por el Secretario de Estado.[3] En atención a ello, plantearon que la peticionaria carecía de personalidad jurídica para demandar. Para sustentar sus argumentos, incluyeron con su moción una carta del Departamento de Estado del 14 de febrero de 2014 en la que se le apercibía a Eagle Security Services-106167 que, de no cumplir con su obligación de presentar los informes anuales vencidos y/o de pagar sus derechos anuales en un término de sesenta (60) días, el

---

[3] A tenor con el certificado de revocación del certificado de incorporación de la entidad, número de registro 106167, la fecha correcta de cancelación es el 16 de abril de 2014.

Secretario de Estado cancelaría administrativamente la entidad jurídica.[4] Incluyeron, además, un *Certificado de revocación del certificado de incorporación* de Eagle Security Services-106167 del 2 de mayo de 2014.[5]

El 4 de agosto de 2020, la peticionaria presentó un escrito titulado *Cumplimiento de orden sobre [e]status corporativo y/o corrección*, en el que aclaró la información relacionada con la existencia de la entidad. Así pues, expuso que Eagle Security, **con número de registro 374508, fue incorporada el 13 de junio de 2016 y cambió su nombre corporativo a Eagle Security Police el 7 de diciembre de 2017.**[6] Sostuvo, además, que por error involuntario presentó la reclamación con el nombre original de Eagle Security. Así las cosas, solicitó autorización del foro primario para enmendar la demanda e incluir el nombre de Eagle Security Police. Atendida la moción del 4 de agosto de 2020, el tribunal de instancia le ordenó a Eagle Security proceder con la enmienda so pena de desestimación sin

---

[4] Valga aclarar que Eagle Security Services, Inc., con número de registro 106167 (Eagle Security Services-106167), no es el mismo ente creado en el 2016 como Eagle Security Services, Inc., con número de registro 374508, el cual posteriormente cambió su nombre corporativo a Eagle Security Police, Inc. (Eagle Security Police-374508 o peticionaria). Según consta del Registro de Corporaciones y Entidades del Departamento de Estado, Eagle Security Services-106167, **fue una entidad existente que quedó cancelada en el 2014. Por su parte, Eagle Security Police-374508, creada en su origen como Eagle Security Services, Inc.-374508, es una corporación vigente desde el 2016.**

[5] *Certificate of Revocation of the Certificate of Incorporation*, Apéndice del *certiorari*, pág. 53.

[6] Nótese que el cambio de nombre realizado el 7 de diciembre de 2017 no canceló ni alteró el número de registro 374508 asignado a la corporación. *Certificate of Amendment*, Apéndice del *certiorari*, pág. 54. Por otra parte, resulta pertinente señalar que el cambio de nombre de la entidad se retrotrajo a la fecha original de incorporación, es decir al 13 de junio de 2016. *Certificate of Good Standing*, Apéndice del *certiorari*, pág. 154.

perjuicio.[7] Asimismo, ordenó a los codemandados informar si, -una vez enmendada la demanda- reiteraban la posición asumida en la moción de desestimación presentada.[8]

El 25 de agosto de 2020, la peticionaria presentó una *Demanda enmendada a tenor con Orden de agosto de 2020*, para incluir a Eagle Security Police, Inc. h/n/c Eagle Security Services, Inc., como parte demandante.[9] En síntesis, expuso que le ofreció servicios de seguridad a los codemandados a partir del 2017. **Explicó que, el 7 de diciembre de 2017 enmendó su nombre corporativo a Eagle Security Police, con el mismo número de registro 374508, asignado en su origen a Eagle Security**. Reiteró, además, que los recurridos le adeudaban $154,599.90 por servicios de seguridad prestados en Paseo del Plata Shopping Center y en la Urbanización Dorado Country Estates.[10] Por ello, solicitó el pago total de la suma reclamada más $10,000.00 por las costas, gastos y honorarios de abogado. Posteriormente, la peticionaria

---

[7]   *Notificación de orden*, Apéndice del *certiorari*, pág. 197.

[8]   Íd.

[9]   Eagle Security Police-374508 incluyó como anejos de la *Demanda enmendada* los documentos siguientes: (1) Certificado de registro de Eagle Security Services, Inc., número de registro 374508 (Eagle Security-374508) del 13 de junio de 2016. *Certificado de Registro*, Apéndice del *certiorari*, pág. 201; (2) Certificado de enmienda del 7 de diciembre de 2017 en el que se acredita el cambió de nombre a Eagle Security Police, Inc. *Certificate of Amendment*, Apéndice del *certiorari*, pág. 202, y (3) un estado de cuenta (*Customer Open Balance*) con las cantidades adeudadas por Paseo del Plata Shopping Center y la Urbanización Dorado Country Estates. Según se desprende del estado de cuenta, se generaron facturas por servicios de seguridad prestados a Paseo del Plata Shopping Center desde el 15 de enero de 2018 hasta el 21 de mayo de 2019. En cuanto a la Urbanización Dorado Country Estates, se generaron facturas a partir del 8 de mayo de 2017 hasta el 14 de agosto de 2018. *Customer Open Balance*, Apéndice del *certiorari*, págs. 203-205.

[10]  Específicamente, la peticionaria alega que se adeudan $76,851.16 y $77,748.75 por los servicios de seguridad prestados a Paseo del Plata Shopping Center y la Urbanización Dorado Country Estates, respectivamente.

presentó una *[Moción de] Sentencia Sumaria* en la que argumentó que, por no existir controversia sobre el cobro de dinero y la deuda reclamada, no había impedimento alguno para que se dictara sentencia a su favor. Adujo, además, que los codemandados utilizaron cheques de sus respectivas corporaciones para pagar los servicios de seguridad brindados.[11]

El 26 de agosto de 2020, el Tribunal de Primera Instancia emitió una *Orden* en la que dispuso que, como estaba pendiente de resolución una moción de desestimación,[12] cualquier determinación en torno a la solicitud de sentencia sumaria quedaba pospuesta debido a que era prematura. Asimismo, dicho foro judicial determinó que independientemente de que se desestimara la demanda, era preciso que los recurridos presentaran su alegación responsiva oportunamente.[13]

El 10 de septiembre de 2020, los codemandados presentaron una *Moción reiterándo[se] en moción de desestimación*. Adujeron que, cuando contrataron con Eagle Security, su certificado de incorporación con el número 106167 estaba cancelado desde el 16 de diciembre de 2014 y que, por tanto, la peticionaria no tenía legitimación activa para presentar la demanda. Añadieron que Eagle Security-

---

[11]  *[Moción de] Sentencia Sumaria*, Apéndice del *certiorari*, pág. 138.

[12]  El foro de instancia les concedió un término a los codemandados para replicar a la comparecencia de la parte demandante.

[13]  *Notificación de Orden*, Apéndice del *certiorari*, pág. 206.

374508 fue creada el 13 de junio de 2016 y que el cambio de nombre corporativo ocurrió el 7 de diciembre de 2017, esto es con posterioridad a la fecha en que las partes realizaban negocios. Así las cosas, alegaron que Eagle Security Police no podía entablar un pleito en su contra toda vez que no formó parte del negocio jurídico contraído. De este modo, se reiteraron en su moción de desestimación.

El 22 de septiembre de 2020, la peticionaria presentó una *Breve r[é]plica y Memorando* en la que expuso que los codemandados intentaban enriquecerse injustamente tras rehusarse a pagar por los servicios de seguridad que prestaron a sus negocios. **Destacó que dichos servicios fueron provistos por Eagle Security Police, ente creado en su origen como Eagle Security-374508.** Planteó que el cambio de nombre de la entidad tuvo el efecto de enmendar el certificado de incorporación de Eagle Security-374508 de manera retroactiva, es decir a la fecha de incorporación original. Acompañó la moción con varios anejos relativos a facturas de servicio no satisfechas; estados de cuenta con el balance adeudado; hojas de asistencia de los guardias de seguridad que brindaron los servicios contratados, y evidencia del cambio de nombre de la entidad a Eagle Security Police.

Entretanto, el 13 de octubre de 2020, los codemandados presentaron una *Réplica a memorando de derecho ([Moción de] sentencia sumaria)*. En ésta, le solicitaron al foro de instancia que denegara el memorando de derecho presentado

por la peticionaria por tratarse de un escrito prematuro, pues estaba pendiente de adjudicación una moción de desestimación que daría fin al pleito incoado. Examinadas las mociones presentadas por las partes, el 4 de enero de 2021,[14] el Tribunal de Primera Instancia emitió una *Sentencia* en la que desestimó la *Demanda enmendada* luego de formular las determinaciones de hechos siguientes:

1. El 16 de abril de 2014, el Departamento de Estado canceló el certificado de incorporación de la demandante Eagle Security Services, Inc., la cual tenía el registro número 106167.

2. El 13 de junio de 2016 fue organizada Eagle Security Police, Inc., con registro número 374508 en el Departamento de Estado.

3. El 7 de diciembre de 2017 se efectuó el cambio de nombre de Eagle Security Services, Inc., a Eagle Security Police, Inc.

4. El cambio de nombre ocurrió posterior a la relación de negocios que tenían la demandante Eagle Security Services, Inc., y la parte demandada.

5. La demandante alegó que, en mayo de 2017, Eagle Security Police, Inc., comenzó prestando sus servicios de seguridad en la Urb. Dorado Country Estates, sin aún haberse realizado el cambio de nombre de Eagle Security Services, Inc., a Eagle Security Police, Inc., que ocurrió el 7 de diciembre de 2017.

6. El 19 de agosto de 2019, Eagle Security Services, Inc., interpuso la demanda de epígrafe.[15]

A la luz de lo antes reseñado, el foro de instancia concluyó que el demandante inició su relación contractual con los codemandados bajo el certificado de incorporación

---

[14]  El archivo en autos de copia de la *Sentencia* fue el 8 de enero de 2021.

[15]  *Sentencia*, Apéndice del *certiorari*, págs. 36-37.

de Eagle Security Services-106167, entidad cancelada por el Departamento de Estado el 16 de abril de 2014. En consecuencia, dispuso que la entidad carecía de personalidad jurídica y, por tanto, no podía realizar negocios a tenor con la Ley de Corporaciones, *supra*. Precisó en su análisis que el término de tres (3) años concedido por el Art. 9.08 de la Ley de Corporaciones, *supra*, 14 LPRA sec. 3708, sólo permitía que Eagle Security Services-106167 realizara gestiones y negocios incidentales y necesarios a la liquidación de sus operaciones. Así, razonó que el cambio de nombre de Eagle Security a Eagle Security Police ocurrió con posterioridad a la contratación de los servicios de Eagle Security Services-106167, por lo que Eagle Security Police no fue parte del negocio jurídico. De otra parte, determinó que las alegaciones de la *Demanda enmendada* no eran suficientes para establecer la existencia de una reclamación legítima en contra de cada una de las corporaciones demandadas.

Inconforme con la decisión del foro de instancia, el 17 de enero de 2021, la peticionaria presentó una *Moción de reconsideraci[ó]n*. Al día siguiente, interpuso un escrito titulado *Enmiendas o determinaciones iniciales o adicionales* en el que solicitó la enmienda de ciertos hechos establecidos en la *Sentencia*. Tras evaluar ambos escritos, el 20 de enero de 2021 el tribunal de instancia los denegó.

En desacuerdo, el 27 de enero de 2021, la peticionaria presentó un recurso de apelación ante el Tribunal de

Apelaciones. Mediante una *Sentencia* emitida el 24 de enero de 2022,**16** el foro apelativo intermedio confirmó el dictamen recurrido. Insatisfecho con ésto, el 8 de febrero de 2022, la peticionaria presentó un escrito de *Reconsideración*, el cual fue declarado *No Ha Lugar* mediante *Resolución* del 10 de febrero de 2022.

Aún inconforme con la decisión del Tribunal de Apelaciones, el 1 de marzo de 2022, Eagle Security Police, Inc. t/c/c Eagle Security Services, Inc., presentó ante este Foro un recurso de *Apelación*, el cual fue acogido como una petición de *certiorari* el 29 de abril de 2022.**17** Como parte del trámite de este recurso, la peticionaria presentó su

---

**16**   El archivo en autos de copia de la *Sentencia* fue el 26 de enero de 2022.

**17**   Valga señalar que en el recurso presentado por la peticionaria se incluyeron seis señalamientos de error:

 1. Erró el [Tribunal de Apelaciones] en la conclusión de derecho en la cual se bas[ó] de que la parte demandante había dejado de existir como ente jurídico a la fecha de radicación del presente caso y que estaba impedida de realizar negocios con la demandada.

 2. Erró el [Tribunal de Apelaciones] al desestimar basándose en que le son de aplicación los artículos de la Ley de Corporaciones referentes a controversias que involucran una disolución corporativa.

 3. Erró el [Tribunal de Apelaciones] al negarse a determinar correctamente que para el 13 de junio de 2016 se incorporó Eagle Security Services, Inc., con el número 374508, cuyo certificado de incorporación fue enmendado el 7 de diciembre de 2017 mediante solicitud de cambio de nombre a Eagle Security Police, Inc., y, por lo tanto, activa.

 4. Erró el [Tribunal de Apelaciones] al no circunscribirse a los periodos reclamados de:

    (A) 15 de enero de 2018 al 21 de mayo de 2019 para Paseo del Plata.

    (B) 8 de mayo de 2017 hasta [el] 14 de agosto de 2018 para Dorado Country Estates.

 5. Erró el [Tribunal de Apelaciones] al no tomar en cuenta la existencia del ente corporativo mediante su certificación por el Departamento de Estado, (Exh. 8). Certificado de Cumplimiento (Good Standing) a nombre de Eagle Security Police, Inc., **número de registro 374508** fechado [el] 25 de enero de 2021. (Exh. 6).

 6. Erró el [Tribunal de Apelaciones] al realizar un compendio de artículos de la Ley de Corporaciones y jurisprudencia relacionado a la disolución corporativa y/o extinción no aplicable al caso de autos.

alegato el 17 de junio de 2022, en el que discutió cuatro de los seis señalamientos de error, a saber:

1. Erró el [Tribunal de Apelaciones] en la conclusión de derecho en la cual se bas[ó] de que la parte demandante había dejado de existir como ente jurídico a la fecha de radicación del presente caso y que estaba impedida de realizar negocios con la demandada, insistiendo en la inexistencia de la corporación.

2. Erró el [Tribunal de Apelaciones] al desestimar basándose en que le son de aplicación los artículos de la Ley de Corporaciones referentes a controversias que involucran una disolución corporativa en lugar de enmiendas al certificado de incorporación y, en este caso, el nombre corporativo.

3. Erró el [Tribunal de Apelaciones] al negarse a determinar correctamente que para el 13 de junio de 2016 se incorporó Eagle Security Services, Inc., con el número 374508, cuyo certificado de incorporación fue enmendado el 7 de diciembre de 2017 mediante solicitud de cambio de nombre a Eagle Security Police, Inc., y, por lo tanto [estaba] activa al momento de contratar y brindar los servicios de seguridad reclamados.

4. Erró el [Tribunal de Apelaciones] al no tomar en cuenta la existencia del ente corporativo mediante su certificación por el Departamento de Estado, Certificado de Cumplimiento (Good Standing) a nombre de Eagle Security Police, Inc., **número de registro 374508** fechado [el] 25 de enero de 2021.

Los codemandados, por su parte, presentaron su alegato el 18 de julio de 2022, el cual titularon *Moción de desestimación*. En su escrito expusieron, entre otros asuntos, que este Tribunal carece de jurisdicción para atender el recurso presentado por la peticionaria como una apelación. Plantearon que, de acoger el recurso como una petición de *certiorari*, los hechos materiales y procesales del caso, así como las conclusiones legales, demuestran que

la *Sentencia* del Tribunal de Apelaciones debe permanecer inalterada. En virtud de ello, los codemandados solicitaron que denegáramos la expedición del *certiorari*.[18] Conforme a lo antes expuesto, el caso quedó sometido en los méritos el 21 de julio de 2022.

Contando con el beneficio de la comparecencia de ambas partes, procedemos a discutir el derecho aplicable.

**II**

A. La moción de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil

Nuestro ordenamiento procesal civil permite que una persona contra quien se haya presentado una reclamación judicial solicite la desestimación de ésta, cuando de las alegaciones de la demanda surja que alguna defensa afirmativa derrotará la pretensión del demandante. Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V; Trans-Oceanic Life Ins. v. Oracle Corp., 184 DPR 689, 701 (2012). Específicamente, la Regla 10.2(5) de Procedimiento Civil, *supra*, establece que la parte demandada puede fundamentar su solicitud de desestimación al invocar la defensa de que la demanda deja de exponer una reclamación que justifique la concesión de un remedio. De este modo, la desestimación solicitada "se dirige a los méritos de la controversia y no

---

[18] En cuanto a la solicitud de desestimación presentada por los codemandados el 18 de julio de 2022 para que denegáramos la expedición del auto de *certiorari*, se declara *No Ha Lugar* por haberse tornado académica el **29 de abril de 2022**, fecha en que acogimos el recurso de apelación presentado por la peticionaria como *certiorari* y expedimos el mismo.

a los aspectos procesales del caso". <u>Montañez v. Hosp.</u>
<u>Metropolitano</u>, 157 DPR 96, 104 (2002).

Una vez presentada una moción bajo este fundamento, los
tribunales están obligados a tomar como ciertos, y de la
manera más favorable a la parte demandante, todos los hechos
bien alegados en la demanda y que hayan sido aseverados de
manera clara y concluyente. <u>González Méndez v. Acción</u>
<u>Social</u> *et al.*, 196 DPR 213, 234 (2016); <u>Rivera Sanfeliz</u>
*et al.* v. Jta. Dir. FirstBank, 193 DPR 38, 49 (2015). Así,
para que proceda una moción de desestimación de este tipo,
"tiene que demostrarse de forma certera en ella que el
demandante no tiene derecho a remedio alguno bajo cualquier
estado de Derecho que se pudiese probar en apoyo a su
reclamación, aun interpretando la demanda lo más
liberalmente a su favor". <u>Íd.</u> (citando a <u>Ortiz Matías</u> *et al.*
<u>v. Mora Development</u>, 187 DPR 649, 654 (2013)).

Reiteradamente hemos expresado que los foros
adjudicativos tienen el deber de interpretar las alegaciones
de una demanda de manera conjunta y liberalmente a favor de
la parte demandante para facilitar el amparo judicial.
<u>González Méndez v. Acción Social</u> *et al.*, *supra*, pág. 234.
Los foros judiciales, al realizar su análisis, deben
ponderar si, a la luz de la situación más favorable al
demandante y resolviendo toda duda a su favor, la demanda
es suficiente para establecer una reclamación válida. <u>Íd.</u>,
pág. 235.

Nótese que nuestro ordenamiento jurídico no establece requisitos complejos para la redacción de una demanda. Regla 6.5 de Procedimiento Civil, 32 LPRA Ap. V. Esto se debe a que la finalidad del proceso legal está enmarcado en el principio rector de impartir justicia y no en fórmulas técnicas en la redacción de las alegaciones. Íd. Surge de la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, que las alegaciones de una demanda contendrán "una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio". De este modo, el demandante, al incoar una causa de acción, no está obligado a alegar todos los hechos que prueben su caso, es decir no tiene que exponer con detalle el trasfondo fáctico en el que basa su reclamación. Tenorio v. Hospital Dr. Pila, 159 DPR 777, 784 (2003). Es norma reiterada que el propósito de las alegaciones es notificarle de forma general a la parte demandada cuáles son las reclamaciones en su contra para que pueda comparecer a defenderse si así lo desea. Íd.

B. La Ley General de Corporaciones

En Puerto Rico, la Ley de Corporaciones, *supra*, es el estatuto especial por virtud del cual se deben atender los cuestionamientos relativos a la existencia y vida jurídica de las corporaciones privadas. Dorado del Mar v. Weber, *et als.*, 203 DPR 31, 45 (2019) (citando a D.A.Co. v. Alturas Fl. Dev. Corp., y otro, 132 DPR 905, 915 (1993)). Específicamente, el Art. 1.05 de la Ley de Corporaciones, *supra*, 14 LPRA sec. 3505, enmarca el comienzo de la

personalidad jurídica de una corporación. En lo pertinente, dicho artículo dispone que:

> A. **Otorgado y radicado el certificado de incorporación**, según lo dispuesto en el inciso (D) del Artículo 1.03 de esta Ley **y pagados los derechos requeridos por ley, la persona o las personas que de tal modo se asociaren, sus sucesores, y sus cesionarios, constituirán, a partir de la fecha de dicha radicación,** o de haberse establecido en el certificado de incorporación, desde una fecha posterior que no exceda de noventa (90) días, **una entidad corporativa con el nombre que aparezca en el certificado,** sujeta a disolución según se dispone en esta Ley.
>
> B. **La emisión del certificado de incorporación por el Secretario de Estado constituirá prueba concluyente de que todas las condiciones requeridas por esta Ley para la incorporación han sido satisfechas,** excepto en procedimientos iniciados por el Estado Libre Asociado para cancelar o revocar el certificado de incorporación o para disolver la corporación.
>
> C. Todas las personas que actúen como corporación sin autoridad para ello, serán responsables solidariamente de todas las deudas y obligaciones incurridas o asumidas como resultado de esta actuación. (Énfasis nuestro).

El profesor Carlos E. Díaz Olivo explica que el propósito del mencionado artículo es "establecer con claridad el momento a partir del cual se entiende que está debidamente constituida una corporación". C.E. Díaz Olivo, *Corporaciones: tratado sobre derecho corporativo*, 2da ed. rev., Colombia, Ed. AlmaForte, 2022, pág. 103. En ese sentido, una vez cumplidos los requisitos de otorgar, radicar, registrar en el Departamento de Estado el certificado de incorporación y pagar los derechos correspondientes, el Estado "está en posición de emitir el certificado de incorporación, el cual es una especie de

certificado de nacimiento que evidencia y oficializa la existencia de la persona jurídica que es la corporación". Díaz Olivo, *op. cit.*, pág. 104.

El Departamento de Estado, como parte de sus deberes, tiene a su haber el registro y la emisión final del certificado de incorporación. Arts. 1.03, 1.04 y 1.05 de la Ley de Corporaciones, *supra*, 14 LPRA secs. 3503, 3504 y 3505. **Así, una vez se materializa dicho trámite en la agencia, comienza la personalidad jurídica del nuevo ente -distinta y separada de sus inversionistas-, la cual se retrotrae al momento de la presentación inicial del documento en el Departamento de Estado.** (Énfasis nuestro). Díaz Olivo, *op. cit.*, pág. 104. Anteriormente, este Tribunal ha expresado que para que una corporación adquiera personalidad jurídica no es suficiente que radique el certificado de incorporación y pague los derechos establecidos por ley, sino que es indispensable que se le expida su certificado de incorporación. Nieves v. Vélez, 64 DPR 138, 143 (1944). Véase, además, Díaz Olivo, *op. cit.*, pág. 104 esc. 120.

La expedición del certificado de incorporación por parte del Secretario de Estado **constituye prueba concluyente de que todos los requisitos necesarios para la incorporación de la entidad han sido satisfechos.** Art. 1.05(B) de la Ley de Corporaciones, *supra*. Es a partir de ese momento que nace la corporación de *jure* y se reconoce y oficializa el privilegio de la responsabilidad limitada de los

accionistas. Díaz Olivo, *op. cit.*, págs. 104 y 108. Una vez constituida debidamente, la corporación queda facultada para ejercer los derechos y poderes conferidos por los Arts. 2.01 y 2.02 de la Ley de Corporaciones, *supra*, 14 LPRA secs. 3521 y 3522. Por esta razón es que, tan pronto ostenta personalidad jurídica y, por ende, legitimación activa, puede otorgar contratos y comparecer a una acción civil como demandante o demandado bajo su nombre corporativo y/o participar en cualquier procedimiento civil, administrativo, de arbitraje o de cualquier otro género. Art. 2.02 (B) y (L) de la Ley de Corporaciones, *supra*, 14 LPRA sec. 3522; Díaz Olivo, *op. cit.*, pág. 19.

De otra parte, el Art. 1.02 de la Ley de Corporaciones, *supra*, 14 LPRA sec. 3503, define en su inciso (D) el término "certificado de incorporación". Así, dispone que, salvo que otra cosa se determine, **dicho concepto incluye el certificado de incorporación original radicado para crear la entidad, así como "todos los certificados**, acuerdos de fusión o consolidación, planes de reorganización u otros instrumentos que sean radicados [...] y **que tenga[n] el efecto de enmendar o suplementar de alguna forma el certificado de incorporación original de una corporación".** (Énfasis nuestro). Íd.

Como cuestión de umbral, la Ley de Corporaciones, *supra*, confiere a la junta de directores y a los accionistas amplia facultad para realizar enmiendas al certificado de incorporación. No obstante, dichas enmiendas están

condicionadas al principio de legalidad y al requisito de que las mismas se hubiesen podido consignar en el certificado de incorporación original. Arts. 8.01(A) y 8.02(A) de la Ley de Corporaciones, *supra*, 14 LPRA secs. 3681 y 3682. Así pues, las enmiendas que se realicen no pueden ser contrarias a la ley, la moral o el orden público. Díaz Olivo, *op. cit.*, pág. 367.

El procedimiento para enmendar el certificado de incorporación está subordinado a la eventualidad de que la corporación haya recibido o no el pago por sus acciones de capital. Arts. 8.01 y 8.02 de la Ley de Corporaciones, *supra*. Sobre este particular, el profesor Díaz Olivo ha expresado que las enmiendas que se realicen antes de que la corporación reciba el pago por las acciones, están limitadas a los momentos iniciales de la entidad. Esto se debe a que una de las primeras actuaciones de una corporación es emitir acciones y recibir la suma correspondiente al valor de éstas. Díaz Olivo, *op. cit.*, pág. 368. De ordinario, una enmienda realizada en conformidad con el procedimiento establecido en el Art. 8.01 de la Ley de Corporaciones, *supra*, tendrá el efecto de retrotraerse a la fecha en que entró en vigor el certificado de incorporación original, salvo que la enmienda afecte sustancial y adversamente a otras personas. En dicho caso, la enmienda realizada será efectiva a partir de la fecha en que fue radicada en el Departamento de Estado. Íd.

En cambio, una vez la entidad recibe pago por sus acciones o cuando se trate de una corporación sin acciones de capital, es necesario recurrir a los enunciados del Art. 8.02 de la Ley de Corporaciones, *supra*. Dicho artículo establece que la corporación puede enmendar, en cualquier momento y en cuanto asunto respecte y desee, su certificado de incorporación para, entre otras cosas, **cambiar su nombre corporativo**. Art. 8.02(A)(1) de la Ley de Corporaciones, *supra*. Así, la enmienda que se realice será efectiva desde la fecha de presentación ante el Departamento de Estado. Art. 1.03(D) de la Ley de Corporaciones, *supra*, 14 LPRA sec. 3503; Reglamento del Registro Electrónico de Corporaciones y Entidades de la Ley General de Corporaciones, Reglamento Núm. 8688, Departamento de Estado, 14 de enero de 2016, Art. 12, págs. 12-14.

El Art. 8.05 de la Ley de Corporaciones, *supra*, 14 LPRA sec. 36, permite la adopción de un certificado de incorporación actualizado para integrar en un solo documento las enmiendas individuales realizadas al certificado de incorporación de origen, **sin que la fecha de incorporación de la entidad cambie o se altere**. Al considerar lo anterior, y ante la ausencia de un pronunciamiento claro y expreso del legislador, nos parece importante precisar que, a pesar de que una enmienda al certificado de incorporación es efectiva desde el momento en que se presenta en el Departamento de Estado -al igual que ocurre cuando se adopta un certificado de incorporación actualizado-, la fecha de incorporación

original de la entidad se mantiene inalterada. Concluir lo contrario significaría interpretar erróneamente que, al realizar una enmienda al certificado de incorporación, la entidad existente hasta ese momento -por virtud de ley- muere para que una nueva persona jurídica nazca o se constituya.

El cambio de nombre corporativo no tiene el efecto de sustituir o extinguir la identidad de la corporación que ha sido debidamente formada. Por esta razón, al cambiar su nombre, la entidad no pierde derechos, privilegios, poderes, facultades o las obligaciones adquiridas. <u>Multinational Ins. v. Benítez y otros</u>, 193 DPR 67, 95 (2015).[19] En el sentido amplio de la lógica jurídica, algunos tratadistas en materia de derecho corporativo han expresado que el cambio de nombre corporativo no tiene más efectos en la identidad de la corporación que los que tiene en una persona natural cuando ésta cambia su nombre legal. 6 Fletcher, *Cyclopedia of the Law of Corporations,* Sec. 2456 (2022). Véase, además, 18A *Am. Jur. 2d Corporations*, sec. 234 (2022).

A modo ilustrativo señalamos que, cuando una persona natural cambia su nombre, no pierde sus derechos u obligaciones. Esto se debe a que con su nacimiento adquiere personalidad y capacidad jurídica, facultades que se

---

[19]   El tratadista William Meade Fletcher expone que: "A mere change in the name of a corporation involves no change in its rights or privileges, and it may sue or be sued in its new name". 9A *Fletcher Cyclopedia of the Law of Corporations,* Sec. 4493 (2022).

extinguen por el solo hecho de la muerte. Arts. 24 y 25 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. secs. 81 y 82 (derogado);[20] E. González Tejera, *Derecho sucesorio puertorriqueño*, San Juan, Ed. Ramallo, 1983, T. 1, pág. 143. En esa dirección, podemos afirmar que las corporaciones, una vez quedan debidamente organizadas ante el Departamento de Estado y obtienen su certificado de incorporación, nacen por virtud de ley, por lo que desde ese mismo instante se les reconoce como personas jurídicas sujetas a derechos y obligaciones. Arts. 1.05 y 2.02 de la Ley de Corporaciones, *supra*; Arts. 27, 29 y 30 del Código Civil de 1930, 31 LPRA ant. secs. 101, 103 y 104; Díaz Olivo, *op. cit.*, págs. 17-19. Para que una corporación muera jurídicamente, es necesario formalizar un proceso de disolución. Miramar Marine *et al*. v. Citi Walk *et al*., 198 DPR 684, 691-692 (2017) (citando a Díaz Olivo, *op. cit.*, pág. 377). No obstante, a diferencia de la muerte de una persona natural, el proceso de disolución no conlleva la extinción automática de la personalidad jurídica de la entidad, pues -por virtud de ley- ésta se extiende por un periodo de tres (3) años -contado a partir de la fecha de disolución- para, entre otras cosas, realizar las gestiones pertinentes con el propósito de finiquitar la gestión corporativa.[21]

---

[20]    Toda vez que los hechos materiales del caso, así como el inicio del pleito incoado ocurrieron durante la vigencia del derogado Código Civil de Puerto Rico de 1930, según enmendado, 31 LPRA ant. sec. 1 *et seq.*, se hace referencia a sus enunciados en la presente Opinión.

[21]    La Ley Núm. 164 de 16 de diciembre de 2009, según enmendada, conocida como *Ley General de Corporaciones*, 14 LPRA sec. 3501 *et seq.* (Ley de Corporaciones),

Ahora bien, al incoar una causa de acción, la corporación debe consignar en sus alegaciones el cambio de nombre, pues es necesario relacionar la reclamación con el nuevo nombre corporativo e identificar a la entidad tanto por su nombre de origen como por el enmendado. Fletcher, *supra*, Vol. 6, Sec. 2456. Así pues, **no cabe hablar de revocación, disolución, liquidación y/o muerte jurídica cuando la corporación, dentro de sus poderes y facultades, cambia meramente su nombre corporativo**.

Expuesta la normativa reseñada, nos encontramos en posición de resolver.

### III

El presente caso nos plantea unas controversias muy particulares, las cuales parecerían sencillas de adjudicación. Empero, luego de evaluar el expediente del caso, tenemos el deber de ejercer nuestro poder revisorio

---

establece en su Art. 9.08 la continuación limitada de la personalidad jurídica corporativa después de la disolución. El mencionado artículo dispone que:

"Toda corporación que se extinga por limitación propia o que por otro modo se disuelva, continuará como cuerpo corporativo por un plazo de tres (3) años a partir de la fecha de extinción o de disolución o por cualquier plazo mayor que el Tribunal de Primera Instancia (Sala Superior) en el ejercicio de su discreción disponga a los efectos de llevar adelante los pleitos entablados por la corporación y de proseguir con la defensa de los pleitos entablados contra ella, ya sean civiles, criminales o administrativos, así como a los efectos de liquidar y terminar el negocio, de cumplir con sus obligaciones y de distribuir a los accionistas los activos restantes. No podrá continuar la personalidad jurídica con el propósito de continuar los negocios para los cuales se creó dicha corporación.

Respecto a cualquier acción, pleito o procedimiento entablado o instituido por la corporación o contra ella, antes de su extinción o dentro de los tres (3) años siguientes a su extinción o disolución, la corporación continuará como entidad corporativa después del plazo de los tres (3) años y hasta que se ejecuten totalmente cualesquiera sentencias, órdenes o decretos respecto a las acciones, pleitos o procedimientos antes expresados, sin la necesidad de ninguna disposición especial a tal efecto por parte del Tribunal de Primera Instancia (Sala Superior)". 14 LPRA sec. 3708.

con cautela, pues cualquier paso en falso frustraría el objetivo principal de impartir justicia. Así las cosas, por estar estrechamente vinculados entre sí, discutiremos en conjunto los cuatro (4) errores señalados.[22]  Veamos.

Como explicáramos, para que una corporación nazca a la vida jurídica, es necesario otorgar, radicar, registrar en el Departamento de Estado el certificado de incorporación y pagar los derechos arancelarios dispuestos para estos fines. Así, una vez el Secretario del Departamento de Estado emite el certificado de incorporación, marca el comienzo, por ficción jurídica, de una persona objeto de derechos y obligaciones.

De un examen integral del expediente, surge que el 13 de junio de 2016 la peticionaria organizó ante el Departamento de Estado la entidad Eagle Security-374508, en conformidad con las leyes del Gobierno de Puerto Rico. Así se desprende del certificado de registro expedido por el Departamento de Estado, el cual se presume válido y constituye prueba *prima facie* de que todas las condiciones requeridas para la incorporación fueron satisfechas. Cumplidos los requisitos legales y expedido el certificado de incorporación, Eagle Security-374508 quedó debidamente facultada para realizar negocios.

No obstante, pasado un año y medio desde la incorporación de Eagle Security-374508, el 7 de diciembre de 2017 dicha

---

[22]  En relación con los señalamientos de error, refiérase a la pág. 11 y la nota al calce 17 a la pág. 10 de esta Opinión.

entidad cambió su nombre corporativo a Eagle Security Police. Este cambio de nombre tuvo el único efecto de enmendar el certificado de incorporación original. Así pues, en nada afectó la identidad, personalidad y/o capacidad jurídica de la corporación creada en su origen. Según surge de las constancias públicas del Registro de Corporaciones y Entidades del Departamento de Estado, ni la fecha de incorporación de la entidad ni el número de registro 374508 asignado en su origen a Eagle Security, ahora Eagle Security Police, cambió, se enmendó o alteró. Resulta evidente que cualquier derecho u obligación atribuible a Eagle Security-374508 lo es también a Eagle Security Police, pues se trata de la misma persona jurídica.

Los recurridos arguyen en su alegato que debemos confirmar la determinación del foro apelativo intermedio. En síntesis, éstos pretenden que aceptemos que la peticionaria carece de legitimación activa para demandarlos en cobro de dinero. Argumentan que la entidad que instó la reclamación en su contra fue Eagle Security Services-106167 y no Eagle Security Police-374508, organizada en su inicio como Eagle Security. Esto, a pesar de que, según la prueba documental que obra en el expediente: (1) Eagle Security Services-106167 fue cancelada por el Departamento de Estado en el 2014; (2) Eagle Security-374508 fue incorporada ante el Departamento de Estado en el 2016, (3) Eagle Security-374508 enmendó su nombre corporativo a Eagle Security Police-374508 el 7 de diciembre de 2017, y (4) los servicios

de seguridad se brindaron desde el 8 de mayo de 2017 hasta el 14 de agosto de 2018 en Dorado Country Estates y desde el 15 de enero de 2018 hasta el 21 de mayo de 2019 en Paseo del Plata Shopping Center, según se desprende de los estados de cuenta, las facturas generadas y las hojas de asistencia firmadas por los empleados de la peticionaria.

Del expediente ante nuestra consideración se desprende que los recurridos, luego de una revisión rutinaria de los archivos electrónicos del Departamento de Estado, encontraron que Eagle Security Services-106167 fue una corporación constituida en Puerto Rico que quedó cancelada administrativamente por el Departamento de Estado el 16 de abril de 2014. Así, mediante una *Moción para suplementar solicitud de desestimación*, informaron al tribunal de instancia sobre dicho asunto e incluyeron copias de la carta de notificación y del certificado de revocación del certificado de incorporación emitidas por el Departamento de Estado. En respuesta a las alegaciones de inexistencia planteadas por los codemandados, la peticionaria presentó un escrito titulado *Cumplimiento de Orden sobre status corporativo y/o corrección*, en el que compareció como Eagle Security Police, Inc. t/c/c Eagle Security Services, Inc. En dicha moción, expuso que Eagle Security-374508 se incorporó el 13 de junio de 2016 y cambió su nombre a Eagle Security Police el 7 de diciembre de 2017. Asimismo, expresó que "por error involuntario se radicó [la demanda] con el nombre original, según los expedientes de muchos años de

Eagle Security y Wilfredo Hernández, su presidente".[23]   Por último, solicitó autorización para enmendar la demanda con el nombre correcto. Vale precisar que la peticionaria complementó su moción con copia del perfil público de Eagle Security Police-374508 ante el Departamento de Estado, así como del certificado de registro de Eagle Security-374508 emitido el 13 de junio de 2016.

Como puede apreciarse, la peticionaria refutó con prueba documental fehaciente las alegaciones sobre inexistencia corporativa y la falta de legitimación activa para demandar, según planteadas por los codemandados. Al examinar los argumentos y la prueba evidenciaria presentados por los recurridos para que se desestimara la causa de acción incoada en su contra, no encontramos justificación para sostener la determinación del foro apelativo intermedio mediante la cual se confirmó el dictamen emitido por el tribunal de instancia.  Ello, debido a que no surge del expediente ante nos que los recurridos hayan logrado establecer que su relación contractual se originó con Eagle Security Services-106167 a los fines de eludir su obligación de pagar la deuda reclamada.

La peticionaria alegó en su *Demanda enmendada* que comenzó a ofrecer servicios de seguridad a los codemandados a partir del 2017, o sea, con posterioridad a la fecha de incorporación de Eagle Security-374508 el 13 de junio

---

[23] *Cumplimiento de Orden sobre status corporativo y/o corrección*, Apéndice del *certiorari*, pág. 58.

de 2016. Relacionó la suma total adeudada con las entidades codemandadas y particularizó los lugares o puestos de trabajo en donde ofreció los servicios de seguridad, así como el balance acumulado por cada localidad. De este modo, indicó que "los servicios fueron ofrecidos principalmente en Paseo del Plata Shopping Center, adeudando $76,851.16 y [en la] Urbanización Dorado Country Estates por $77,748.75".[24] Como vemos, ambas cuantías ascienden a $154,599.90, la suma reclamada por la peticionaria.

Durante el desarrollo del pleito, la peticionaria también presentó al tribunal de instancia unos documentos complementarios para sustentar su caso, tales como comunicaciones electrónicas enviadas a los codemandados en el 2018 para reclamar el pago de lo debido; copia de una carta suscrita en el 2019 por el Sr. David Efrón de Efrón Dorado, S.E., y dirigida al Sr. Wilfredo Hernández, presidente de la peticionaria;[25] copia de varias facturas pendientes de pago de los años 2017 y 2018,[26] y copia de los

---

[24]   *Demanda enmendada a tenor con Orden de agosto de 2020*, Apéndice del *certiorari*, pág. 199.

[25]   En su carta, el Sr. David Efrón le comunicó al Sr. Wilfredo Hernández lo siguiente:

> **No nos interesa descontarte nada de lo que han trabajado y cumplido,** solo deduje los cargos por el turno que no cubren hace aproximadamente un año. De lo que cubrieron, no estoy pidiendo un chavo de descuento.
>
> No veo el propósito de reunirnos para discutir innecesariamente. Tanto Román como inquilinos y clientes continuamente reportaban que **ese turno no se cubría**, excepto en rara ocasión según explico en mi carta del 9 de abril. (Énfasis nuestro).

[26]   Dichas facturas contienen la fecha de su emisión; la información de las entidades a las que se les facturó el servicio, las cuales corresponden a Efrón Dorado S.E., y Dorado Country Estates, Inc., por los servicios de seguridad brindados en Paseo del Plata Shopping Center y en Dorado Country Estates, respectivamente; el desglose de los servicios prestados; los periodos en que se brindó el servicio; el total de horas trabajadas por los guardias de seguridad;

estados de cuenta con todas las facturas generadas por los servicios de seguridad brindados en Paseo del Plata Shopping Center y en la Urbanización Dorado Country Estates.[27] Nótese que toda la prueba presentada por la peticionaria mientras litigaba su causa de acción fue originada con posterioridad a la fecha de incorporación de Eagle Security-374508. A pesar de que los codemandados alegaron la falta de existencia de la peticionaria amparándose en los documentos de cancelación de Eagle Security Services-106167, resulta forzoso concluir que dicho proceder fue insuficiente para rebatir la prueba *prima facie* sobre la existencia de Eagle Security-374508, la cual, a todas luces, es una entidad distinta a la primera.

Al examinar los argumentos de los recurridos para derrotar la reclamación de la peticionaria, surge con claridad que su presentación no es más que un intento para evadir el pago de la deuda contraída, producto de la relación contractual habida entre las partes. En su alegato en oposición, los codemandados aducen que la peticionaria aceptó que por error involuntario presentó la reclamación bajo el nombre de Eagle Security Services-106167. Esto no se sostiene en el expediente, pues la peticionaria sólo

---

el costo por hora de servicio, así como el balance adeudado por semana de trabajo. Las antes mencionadas facturas, fueron acompañadas con copias de las hojas de asistencia semanales de los guardias de seguridad que brindaron el servicio en los distintos puestos de trabajo.

[27] Según se desprende de los estados de cuenta que obran en el expediente, la facturación por los servicios de seguridad brindados en la Urbanización Dorado Country Estates, comenzó el 8 de mayo de 2017 y terminó el 14 de agosto de 2018. En cuanto a Paseo del Plata Shopping Center, la facturación comenzó el 15 de enero de 2018 y terminó el 21 de mayo de 2019. *Customer Open Balance*, Apéndice del Certiorari, págs. 55-57.

afirmó que "[p]or error involuntario radic[ó] [la reclamación] con el nombre original según los expedientes de muchos años de Eagle Security […]".

Como es sabido, nuestro derecho corporativo faculta a las entidades jurídicas debidamente constituidas a realizar enmiendas a su certificado de incorporación para, entre otras cosas, enmendar su nombre corporativo. De ordinario, la fecha de radicación de la enmienda tiene vigencia desde el momento en que se presenta ante el Departamento de Estado, salvo que se disponga otra fecha en el certificado de resolución, según permitido por la Ley de Corporaciones, *supra*, pero la fecha de incorporación original se mantiene inalterada. Específicamente, un mero cambio de nombre no tiene el efecto de crear una nueva persona jurídica ni dar fin a la original. De este modo, cuando una persona jurídica enmienda su certificado de incorporación para cambiar su nombre, nos encontramos ante la misma persona constituida en su origen, pero con nombre distinto.

Cabe preguntarse si una entidad, que cambia su nombre y no enmienda los contratos otorgados para hacer constar tal hecho, pierde su derecho o interés propietario para reclamar el pago de lo debido. Contestamos en la negativa. Sostener lo contrario representaría contravenir la Ley de Corporaciones, *supra*, pues desvirtuaríamos el propósito e intención legislativa de facilitar y promover las actividades comerciales. Por otro lado, dejaríamos en un estado de indefensión a la persona jurídica para reclamar

sus derechos e intereses al realizar un mero cambio de nombre que en nada incide sobre los deberes y las obligaciones contraídas. En un supuesto alternativo, también estaríamos aceptando que las corporaciones, al cambiar su nombre, puedan evadir el pago de sus obligaciones. Este escenario claramente no se sustenta en derecho.

La peticionaria, al instar su demanda en cobro de dinero, incluyó en el epígrafe a Eagle Security como parte demandante. Sin embargo, no relacionó la entidad con Eagle Security Police. No fue hasta que enmendó su reclamación, por tercera vez, que así lo hizo constar. Tampoco se desprende del expediente que la peticionaria les haya comunicado a los recurridos sobre el cambio de nombre realizado en el 2017. Ciertamente, dicha omisión sólo tuvo el efecto de que éstos no pudieran actualizar sus registros corporativos internos al respecto, pero no por ello se pueden liberar de sus obligaciones con la peticionaria.

En cuanto a la defensa invocada por los codemandados acerca de que la peticionaria en su *Demanda enmendada* dejó de exponer una reclamación que justificara la concesión de un remedio, resolvemos que no les asiste la razón. Tenemos presente que los codemandados en sus distintas mociones de desestimación minimizaron la existencia de Eagle Security Police-374508 como ente corporativo creado desde el 2016, así como la evidencia presentada por la peticionaria para probar tal circunstancia. Sin embargo, tras evaluar detenidamente las alegaciones de la peticionaria, sostenemos

que ésta cumplió con aportar el detalle suficiente para demostrar tener derecho a un remedio. Así las cosas, la peticionaria estableció su vínculo contractual con los codemandados al alegar que les brindó servicios de seguridad desde el 2017, así como la suma total y particularizada por puesto de trabajo adeudada. A fin de cuentas, según hemos expresado en el pasado, un demandante no está obligado a exponer con especificidad el trasfondo fáctico en que basa su reclamación. Tenorio v. Hospital Dr. Pila, *supra*.

Luego de estudiar detenidamente el texto legal pertinente, así como la jurisprudencia interpretativa aplicable, **resolvemos que el mero cambio de nombre de una corporación no afecta sus derechos o intereses propietarios para reclamar cualquier acreencia.** Concluimos que erró el tribunal apelativo intermedio en la apreciación de la prueba y al confirmar la *Sentencia* emitida por el Tribunal de Primera Instancia. Máxime al no considerar la existencia de Eagle Security Police-374508, organizada en su origen como Eagle Security, al aplicar al caso las disposiciones sobre disolución corporativa de la Ley de Corporaciones, *supra*, y, al no tomar en cuenta el certificado de cumplimiento ("Good Standing") de la entidad, sin contar con un tracto fáctico y procesal más desarrollado. Resulta claro, pues, que sostener lo contrario conllevaría un fracaso craso a la justicia, toda vez que permitiríamos el enriquecimiento injusto de los recurridos de poder la peticionaria prevalecer finalmente en su reclamación contra éstos en su

día y no haberle brindado la oportunidad de ello de sostener la desestimación de su reclamación realizada por los foros recurridos.

**IV**

Por los fundamentos antes expresados, se revocan la *Sentencia* emitida por el Tribunal de Apelaciones el 24 de enero de 2022 y la *Sentencia* dictada por el Tribunal de Primera Instancia el 4 de enero de 2021. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de acuerdo con esta *Opinión*.

Se dictará *Sentencia* en conformidad.


ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Eagle Security Police, Inc. t/c/c Eagle Security Services, Inc.<br><br>Peticionario<br><br>v.<br><br>Efrón Dorado, S.E.; Norfe Development Corp.; Golden RE LLC; DCE Enterprises, Inc. h/n/c Paseo del Plata Shopping Center y Dorado Country Estates Homeowners Association, Inc. h/n/c Dorado Country Estates<br><br>Recurridos | AC-2022-23 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico a 20 de enero de 2023.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte íntegra de la presente *Sentencia*, se revocan la *Sentencia* emitida por el Tribunal de Apelaciones el 24 de enero de 2022 y la *Sentencia* dictada por el Tribunal de Primera Instancia el 4 de enero de 2021. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos en conformidad con lo dispuesto en la *Opinión*.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo